IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 5, 2015

## STATE OF TENNESSEE v. PATRICIA SMITH

**Appeal from the Criminal Court for Shelby County**
**No. 12-04743     W. Mark Ward, Judge**

---

**No. W2014-02106-CCA-R3-CD  -  Filed June 1, 2015**

---

Appellant, Patricia Smith, was convicted of aggravated burglary, a Class C felony, and the trial court sentenced her to three years, suspended to probation after forty-five days in confinement. On appeal, appellant argues that there was insufficient evidence to support her conviction. Following our review of the parties' briefs, the record, and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Stephen C. Bush, District Public Defender; and Barry W. Kuhn (on appeal) and Jim N. Hale, Jr. (at trial), Assistant District Public Defenders, Memphis, Tennessee, for the appellant, Patricia Smith.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Senior Counsel; Amy P. Weirich, District Attorney General; and Omar Zia Malik, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case concerns appellant's entry into a rental property under the guise of working for the bank responsible for the property. When the deception was discovered, appellant was arrested and indicted for aggravated burglary. Appellant's trial began on May 27, 2014.

## I. Facts

At trial, Hunter Burks testified that on April 7 and 8, 2012, he was in the process of moving from a rental home on Colonial Road in Memphis, Tennessee, to a house that was located six to eight houses down the road from the rental home. On April 7, he arrived at the rental home and noticed an unfamiliar "light grayish silver" Oldsmobile Alero parked in the driveway. Mr. Burks noticed that his Nintendo Wii gaming system, "shop vac," and bagged clothing were in the back of the car. When Mr. Burks went inside the home, appellant informed Mr. Burks that she had been hired by the bank to "clear the property." Mr. Burks informed appellant that there must have been a mistake and that he was authorized to be in the house that day. Mr. Burks told her that he should be finished moving that day and requested that she return the items in her car. Appellant complied, and Mr. Burks retrieved the items. Appellant told Mr. Burks that he needed to be finished moving by dark so that she could begin clearing the property, and appellant left. Approximately six hours later, while Mr. Burks was removing some ceiling fans that he had purchased, appellant returned and inquired why appellant was taking fixtures out of the house. Appellant informed Mr. Burks that the ceiling fans were part of the house and could not be removed. Appellant then told Mr. Burks that he would no longer be allowed entry into the house and that he would be arrested for trespassing if he returned, which Mr. Burks considered "a pretty big red flag . . . that now something wasn't right." Mr. Burks continued moving his property, disregarding appellant's assertion as untrue because he had until April 9 to vacate the property. Appellant finished moving about 3:00 or 4:00 a.m. on the morning of April 8. Appellant noticed that some more of his property was missing, specifically his 3D glasses for his 3D television, some clothing, a sports jacket with a letter from his deceased mother in the pocket, a deep freezer, and "a few big items." Mr. Burks valued the missing property at $3000 to $5000.

Mr. Burks further testified that after he noticed the missing items, he sent a text message to Carol Stout, the real estate agent handling the rental property, and requested that "the cleaning lady" return the missing items. Ms. Stout responded that she had not hired anyone to clear the property. Mr. Burks described appellant, and Ms. Stout indicated that such a person had not been hired by her or the bank. Due to this conversation, Mr. Burks watched from his new home and saw appellant return to the rental property on the morning of April 8. Mr. Burks drove his vehicle to the rental property and attempted to block appellant's car in the driveway. Appellant exited the house and began yelling at Mr. Burks. He informed her that he was calling the police because she was trespassing. Appellant got back into her car and exited the driveway around Mr. Burks' vehicle. Mr. Burks followed appellant in his own vehicle and informed the 9-1-1 operator about the situation and appellant's location. Shortly thereafter, Memphis police officers apprehended appellant. Mr. Burks explained that

prior to April 7, 2012, he did not know appellant and that he did not give her permission to be inside the house.

During cross-examination, Mr. Burks stated that he only owned one deep freezer and that it was stolen. Mr. Burks agreed that while he was moving, the utilities to the house were turned off. Mr. Burks testified that he was moving due to a foreclosure on the property. Mr. Burks agreed that he did not tell appellant about the foreclosure but explained that foreclosures were listed in the Memphis Business Journal. Mr. Burks explained that he began noticing that items were missing throughout the process of his move and that after carrying items to his new home, he would return to the rental property and notice that items had been "shimmied around" and were missing. Mr. Burks also noticed that some of the doors were open when he returned to the property even though he locked the doors each time he left. Mr. Burks attempted to solve the problem by putting bungee cords on the doors at issue. Mr. Burks explained that he noticed the missing deep freezer in the early morning hours of April 8 because it was the last item that he intended to move. However, when he returned to the rental property, the freezer was missing. Mr. Burks asserted that he never had a personal conversation with appellant and that he did not ask her to go on a date with him. Mr. Burks estimated that the cost of the 3D glasses was $300, that the sports jacket was $500, and that the deep freezer was $1000.

Carol Stout testified that she was employed as a realtor and that she represented Regions Bank in the majority of their foreclosures in Memphis because the bank did not have an office in Memphis. When the bank informed her of a foreclosure, she notified the bank as to the property's occupancy status, and once the property was vacated, she hired a crew to change the locks, clean the property, make minor repairs, and prepare the property for the real estate market. Ms. Stout explained that she had been working with the same crew in this capacity for about five years. Ms. Stout recalled Mr. Burks' calling her about a woman removing his belongings from the rental property. Ms. Stout testified that she informed Mr. Burks that no one should be at the property. Ms. Stout explained that she was not taking possession of the property until April 9 and that if someone had been authorized to come onto the property, she would have sent them, which she did not. Ms. Stout did not know appellant, and she did not give appellant permission to enter the rental property.

Robert Brown, an investigator with the Memphis Police Department, testified that on April 8, 2012, he was working as a patrol officer. Investigator Brown explained that while on patrol, he received a call from dispatch reporting the incident and giving a description of appellant. Investigator Brown, along with another officer, stopped appellant's vehicle, and Mr. Burks informed Investigator Brown that appellant had entered his house and was removing property from the home. The officers observed a chainsaw and some lawn equipment in the back of appellant's car, and in response to

questioning, appellant asserted that she worked for the bank and that she was clearing out the property. She even provided the officers with the address of the rental property. Appellant was arrested and charged with aggravated burglary.

During cross-examination, Investigator Brown could not recall if Mr. Burks told him that some of his property was still missing or if appellant had returned all of the items. Investigator Brown stated that he did not think that the chainsaw and other equipment belonged to Mr. Burks. Following this testimony, the State rested its case-in-chief.

Appellant testified in her own defense and stated on April 7, she drove by a house that had garbage on the front sidewalk consisting of clothes, beer bottles, and "junk." Appellant explained that she stopped to see what items were being thrown away because she liked looking at what other people threw away and because some people throw away "some really good stuff." Appellant explained that when going through other people's garbage, she retrieved things that she could sell in a yard sale or that she could give to others. While appellant was sorting through the trash bags, Mr. Burks, whom she did not know, walked out of the house carrying two garbage bags. Appellant claimed that she asked to continue looking through the bags, and Mr. Burks gave her permission. She found a "little glass knickknack" that she kept. Appellant stated that Mr. Burks gave her permission to enter the home alone so that she could look around to see if there were other items that would be good for her yard sales. Upon entering the home, appellant noticed that the home had an unpleasant odor, that there were roaches, that there were holes in the walls, and that there was a lot of trash. Appellant also noticed the light covers, light switches, and ceiling fans had been removed. Appellant testified that she did not tell Mr. Burks that she was from the bank, but rather, she told him that her sister worked for a real estate attorney and that the bank could "come back on" him if the house had been "gutted" or destroyed. Appellant claimed that she became uncomfortable when Mr. Burks asked about the location of her home, her marital status, and if she would meet him for a drink in the future. Appellant explained that after she repeatedly refused to go out with Mr. Burks, his face turned red, and he told her that she could have what items remained after he was finished moving.

Appellant returned to the rental home on April 8 to look through the items left on the street at the house. Appellant explained that she had only been at the house for "20 seconds maybe" when Mr. Burks drove into the driveway so fast that he hit the bumper of her car. Mr. Burks exited his vehicle and claimed that she was not allowed on the property. Appellant explained that Mr. Burks had been sweating and his face was red and that he scared her, so she left the property. Appellant claimed that when she saw that Mr. Burks was following her, she drove toward a police station. However, en route, she was stopped by officers. Appellant testified that she never told either Mr. Burks or Investigator Brown that she worked at a bank. Appellant asserted that she only went to

the property one time on April 7 and one time on April 8. Appellant said that she did not remove a freezer or any clothing from Mr. Burks' home. Appellant also stated that she never put a Nintendo Wii or a "shop vac[]" in her car.

During cross-examination, appellant testified that she was a nurse, that she had not attended law school, and that she was not a certified real estate agent; therefore, she had no formal training to support her advice to Mr. Burks. Appellant testified that both Investigator Brown and Mr. Burks lied in their testimony. Appellant also denied going inside the rental house on April 8.

Rita Trigg testified that she was appellant's sister and that on April 8, 2012, appellant called her "hysterical" and "crying" because she had been arrested. Appellant told Ms. Trigg where the rental house was located, and Ms. Trigg went to the house with her camera and took pictures of the house. Some of the pictures that Ms. Trigg took were entered as exhibits. Most relevant was a picture taken of the back of the house that showed a freezer pushed against the back door of the home. Ms. Trigg described the property as having a lot of garbage and an overgrown lawn. Ms. Trigg stated that the freezer "had stuff in it that was just rancid."

During cross-examination, Ms. Trigg agreed that she was not at the property with appellant on April 8 and that she did not witness any of the interactions at issue. Ms. Trigg also conceded that she had no property rights at the rental property and that she had gone into the backyard of the rental property on April 8.

The jury convicted appellant of aggravated burglary, and the trial court sentenced appellant to three years, suspended to probation after forty-five days of confinement.

## II. Analysis

On appeal, appellant argues that the evidence was insufficient to support her conviction of aggravated burglary. Specifically, she contends that at the time of the crime, the rental home was not a habitation under the statute and that Mr. Burks was not a credible witness. The State responds that the evidence was sufficient to uphold appellant's conviction. We agree with the State.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the

essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

To sustain a conviction for aggravated burglary as charged in the indictment, the State must prove beyond a reasonable doubt that appellant entered a habitation without the effective consent of the property owner and with the intent to commit theft. Tenn. Code Ann. § 39-14-402, -403. "As used in this section, 'enter' means . . . [i]ntrusion of any part of the body[] or [i]ntrusion of any object in physical contact with the body or any object controlled by remote control, electronic or otherwise." *Id.* § 39-14-402(b). Burglary can be proven through direct or circumstantial evidence. *See State v. Holland*, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993).

There was sufficient evidence to support appellant's conviction. The evidence, viewed in the light most favorable to the State, showed that on April 7, 2012, appellant went inside the rental home and began removing Mr. Burks' items, initially putting Mr. Burks' Nintendo Wii, "shop vac," and bagged clothing in the back of her car, although these items were later returned. Mr. Burks also noticed that more of his property was missing on the morning of April 8. Appellant told both Mr. Burks and Investigator Brown that she worked for the bank; however, Ms. Stout, who was responsible for the property and who represented the bank, testified that she did not know appellant and had

not hired appellant to clear the property. Neither Mr. Burks nor Ms. Stout consented to appellant's entering the property.

Appellant argues that the rental property was no longer a habitation pursuant to Tennessee Code Annotated section 39-14-403(a) because Mr. Burks no longer lived at the residence and because the residence was uninhabitable. She claims that the "[c]abinets had been ripped out in the kitchen, trash was everywhere, and the utilities had been turned off." However, a habitation is defined, in relevant part, as "any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons." *Id*. § 39-14-401(a)(1). A house does not need to be occupied to be a habitation. *See State v. Langford*, 994 S.W.2d 126, 128 (Tenn. 1999). Furthermore, a house is still a habitation even if it is in disarray and in need of structural repairs. *See State v. Dwayne Tyrone Simmons*, No. M2004-01105-CCA-R3-CD, 2005 WL 1931409, at *3 (Tenn. Crim. App. Aug. 10, 2005). Although the rental property may have been in a state of disrepair, it was still "designed or adapted" for individuals to stay overnight inside the house and had served as a rental property until Mr. Burks vacated it. The structure in question met the applicable statutory definition of a habitation; therefore, appellant's argument in this regard is unavailing.

Appellant also argues that Mr. Burks was not a credible witness because he testified that appellant took his freezer; however, the freezer, as depicted in the photograph taken by Ms. Trigg, was still located on the rental property at the back of the house. This argument is also unavailing because in a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as the trier of fact. *Bland*, 958 S.W.2d at 659; *Pruett*, 788 S.W.2d at 561. We will not re-evaluate issues of credibility on appeal. Appellant is not entitled to relief.

## CONCLUSION

Based on the parties' briefs, the record, and the applicable law, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE